CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2016 JUN 23 PM 3: 27

DEPUTY CLERK_____

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **RONALD L. CHANDLER,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.  4:15-CV-594-BL** |
| | § | |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | **Assigned to U.S. Magistrate Judge** |

## MEMORANDUM ORDER AND OPINION

Pursuant to 42 U.S.C. § 405(g), Ronald Chandler seeks judicial review of the decision of

the Commissioner of Social Security (Commissioner), who denied his application for

Supplemental Security Income (SSI) under Title II of the Social Security Act (Act). The United

States District Judge reassigned the case to this Court pursuant to 28 U.S.C. § 636(c). The parties

have consented to proceed before a United States Magistrate Judge. After considering all the

pleadings, briefs, and administrative record, this Court finds that the decision of the

Commissioner is affirmed and the Plaintiff's case is dismissed.

### I. STATEMENT OF THE CASE

Plaintiff filed an application for SSI on March 30, 2012, alleging impairments that were

disabling as of March 1, 2012. That application was denied initially on August 15, 2012 and

again on reconsideration on November 6, 2012. Plaintiff requested a hearing, which was held

before an Administrative Law Judge (ALJ) on November 5, 2013. The ALJ issued a decision on

January 8, 2014, finding Plaintiff not disabled.

Specifically, the ALJ found during step one that Plaintiff had not engaged in substantial

gainful activity since March 30, 2012. (Doc. 14-3, 22). At step two, the ALJ found plaintiff had

the severe impairments of carpal tunnel syndrome on one side, hypertension, a tear of the right

rotator cuff, obesity, borderline intellectual functioning, bipolar disorder, mood disorder, and

schizophrenia. (Doc. 14-3, 22). In step three, the ALJ found that Plaintiff did not meet or equal in

combination one of the impairments listed in 20 C.F.R. § 404(p). (Doc. 14-3, 22). The step three

analysis continued, with the ALJ finding that Plaintiff

> Has the residual functional capacity to perform light work … except
> pushing/pulling limited in the upper extremities to 20 pounds, never
> climbing ladders, ropes or scaffolds, occasionally climbing ramps and
> stairs, occasionally balancing, stooping, kneeling, and crouching, never
> crawling, frequent reaching, handling, fingering, and feeling, no overhead
> reaching with the right upper extremity, with the left upper extremity
> constant reaching, handling, fingering, and feeling, no visual or
> communication limitations, must avoid exposure to hazardous moving
> machinery and unprotected heights, is able to understand, remember and
> carry out short simple instructions in a simple and routine work
> environment, can only make simple judgments on work-related decisions,
> is limited to occasional public contact, can interact appropriately with
> supervisors and coworkers, and is able to respond appropriately to work
> pressures and changes in this work setting.

(Doc. 14-3, 24). At step four, the ALJ concluded that Plaintiff has no past relevant work, and at

step five determined that the administration met its burden by showing there were sufficient

opportunities in the local and national economy at which Plaintiff could perform capably, and

that Plaintiff was therefore not disabled. (Doc. 14-3, 27-28).

## II. FACTUAL BACKGROUND

According to his pleadings, testimony at the administrative hearing, and the

administrative record, Plaintiff was forty-six years old and living with family at the time of the

administrative hearing. He reported completing eleventh grade. He has little significant

employment experience, which is made up of sweeping, closely-directed work at Goodwill placing items in the right areas, and loading and unloading boxes. He complains of physical impairments including a rotator cuff injury, and a hand injury, and mental impairments including "intellectual limitations" as well as difficulty concentrating and remembering. He alleges that, in totality, his physical and mental impairments render him disabled under the Act.

### III. STANDARD OF REVIEW

A person is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423 (d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b).

To evaluate a disability claim, the Commissioner follows a "five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*,

3

415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the Court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton*, 209 F.3d at 452. The Court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the Court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton*, 209 F.3d at 452.

## IV. DISCUSSION

Plaintiff raises two issues on appeal. He alleges that the ALJ failed to properly consider and weight medical opinion evidence, and that the ALJ did not meet the step five burden of showing that work in significant numbers in the national economy existed which could be performed by Plaintiff.

## A. Medical Opinion Evidence and Residual Functional Capacity

Plaintiff claims that the ALJ failed to properly consider the medical evidence offered by three medical sources in establishing the RFC finding. (Doc. 19, 11-18). The first such source is Stephen Karten, Ph.D., a psychologist who analyzed the Plaintiff at the request of the Commissioner in connection with an earlier disability proceeding. (Doc. 14-8, 279). Plaintiff argues that opinions offered by Dr. Karten which were ignored or rejected include a finding that "Plaintiff had limited interpersonal skills[,]" "cannot read or write[,]" had "slowed and simplistic thought processes and difficulty with memory," "likely functions in the mentally retarded intellectual range[,]" had a mood disorder, and "cannot make social or occupational adjustments." (Doc. 19, 11-12). Defendant notes that the examination was performed outside the period in question for this disability proceeding and that "the portion of Dr. Karten's examination that Chandler holds such stock in … was directly contradicted by the consultative examination dated within the relevant time that showed Chandler's social functioning was relatively intact." (Doc. 20, 8). Plaintiff counters that, as the ALJ admitted this medical opinion into the record, he must have considered it relevant and is therefore bound to analyze it in his decision. (Doc. 21, 2).

Dr. Karten's opinion is not that of a treating physician which must be analyzed if rejected in favor of that of a non-treating physician. *Newton*, 209 F.3d at 453. An ALJ need not specifically list evidence accepted and rejected in reaching findings. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). As there is reliable medical evidence in the record which disagrees with the opinion, it is not reversible error for the ALJ to fail to explicitly weigh and consider the opinion. This is especially true when the opinion dates from outside the relevant time period and the contradictory evidence does not. Plaintiff's burden is not to highlight evidence that may tend

to contradict the ALJ's ruling, but rather to show that there is no substantial evidence supporting the ALJ's decision.

Plaintiff next argues that the opinion of another consultative psychologist, Scott Hilborn, Ph.D., was similarly not fully reckoned with. (Doc.19, 12). According to the Plaintiff, Dr. Hilborn "determined that [Plaintiff] carries diagnoses of schizophrenia, paranoid type; bipolar disorder; and mild mental retardation." (Doc. 19, 12). These effectively mirror the findings of severe impairments the ALJ made in his decision. (Doc. 14-3, 27). Since these limitations were clearly considered by the ALJ, Plaintiff instead argues that since Dr. Hilborn - in a response to an interrogatory after the hearing - states that "it is unlikely that [Plaintiff] would be able to understand, remember and carry out simple instructions; make simple decisions; concentrate for extended periods; interact with others; and respond to changes in a work setting[,]" and that the vocational expert ("VE") stated that an inability to concentrate may negatively impact a person's ability to perform in an employment context, that the ALJ did not have a reasonable basis for finding that the Plaintiff could perform the jobs found by the VE. (Doc. 19, 13).

The ALJ stated in his decision that "Dr. Hilborn's opinion that the claimant would be unable to sustain work is given little weight because the medical record indicated that the claimant showed improvement with his mental health with counseling and medical treatment." (Doc. 14-3, 32). Plaintiff argues that the record does not support the assertion that Plaintiff's mental health improved, but the Defendant points to the opinion of Plaintiff's treating psychiatrist, Dr. Mims, as well as Plaintiff himself, both stating that the medication seemed to be effective when taken. (Doc. 19, 13; Doc. 20, 10). Plaintiff objects that the ALJ did not explicitly cite to this evidence when stating that the claimant showed improvement, but error in neglecting to do so, if any, is harmless. (Doc. 21, 3). This evidence from a treating psychiatrist, as well as

the testimony of the Plaintiff himself, that medication was proving to be an effective treatment certainly qualifies as substantial evidence in support of the ALJ's assertion. Plaintiff points to case law from other jurisdictions indicating that a statement that a claimant was "doing well" could not be used to contradict the opinion of a treating physician, but fails to reckon with the fact that in this case, it was the opinion of the *treating source* that treatment was having positive effect. (Doc. 21, 3 (citing *Gade v. Sullivan,* 956 F.2d 791, 794 (8th Cir. 1992); *Pinckney v. Apfel,* 1998 WL 846596 (N.D. Cal. Nov. 24, 1998); *Taveras v. Apfel,* 1998 WL 557587 (S.D.N.Y. Sept. 2, 1998)).

The plaintiff finally argues that the opinion of Dr. Mims was not analyzed as required by 20 C.F.R. 416.927. (Doc. 19, 14). Plaintiff cites some evidence provided by Dr. Mims, but argues mainly that Dr. Mims' opinion that Plaintiff is disabled cannot be discounted in favor of the opinions of non-examining physicians. (Doc. 19, 16-17).  Plaintiff is  partially correct: it is reversible error to reject the opinion of a treating physician, like Dr. Mims, in favor of that of a non-treating source without performing the required analysis. *Newton,* 209 F.3d at 453. However, whether a claimant is disabled or not is an ultimate issue reserved to the Commissioner, and an ALJ rightly may disregard opinions from medical sources which come in the form of finding a person disabled instead of in the form of assessing medical conditions and limitations. *See Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995) (finding that the ALJ is responsible for determining a claimant's RFC). The proposition that a claimant cannot perform acceptably in any work environment is not itself a limitation, but instead must be established by limitations and determined by the Commissioner. So, for the ALJ to be required to analyze Dr. Mims' opinion as Plaintiff argues, the ALJ would need to have rejected the opinion regarding a medical condition or limitation in favor of that of a non-examining source.

## B. Existence of Work Claimant is Capable of Performing

Plaintiff also argues that the ALJ did not meet his step-five burden of showing that there is work in significant numbers which the Plaintiff could perform. (Doc. 19, 18). Plaintiff asserts that, as the jobs listed by the VE which Plaintiff could perform either require Level 2 reasoning according to the Dictionary of Occupational Titles or are classified as SVP-2, those jobs did not conform to the ALJ's hypothetical requesting a simple and routine work environment. (Doc. 19, 18-20). Plaintiff also argues that the restriction to simple and routine environments in the ALJ's hypothetical does not properly incorporate all of Plaintiff's limitations established by the record. (Doc. 19, 21). Defendant responds that all jobs the VE listed were unskilled and that "the distinction between Reasoning Levels 1 and 2 of the DOT is minimal ...." (Doc. 20, 16).

The hypothetical question posed by an ALJ to a VE should reasonably incorporate the claimant's limitations as recognized by the ALJ. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). The burden shifts at step five, so that the ALJ must show that there are sufficient jobs in the economy a claimant can perform. *Waters*, 276 F.3d at 718. Plaintiff cites a case from this district in which an ALJ's determination that a claimant could return to past relevant work as a store laborer was not supported by substantial evidence as the DOT and VE testimony were contradictory as to whether that job could be performed by a worker following only simple instructions. Doc. 19, 19 (citing *Nichols v. Comm'r of Soc. Sec. Admin.*, 2011 WL 2669056 (N.D. Tex. June 10, 2011).

However, in the instant case, the ALJ decided that the Plaintiff had no past relevant work, and so was not finding that he could return to that past relevant work. Even if this were not the case, *Nichols* speaks to a direct conflict between the DOT and the VE testimony which does not

occur in this case. Plaintiff argues that he cannot perform the job because it is SVP-2 and "SVP-2 jobs require the ability to carry out detailed but uninvolved written or oral instructions." Doc. 19, 19; *Nichols* at *6. However, the DOT entry for "Cleaner, Housekeeping" states that it requires the worker to "[a]pply commonsense understanding to carry out simple one- or two-step instructions." DICOT 323.687-014. There is no support for Plaintiff's assertion that there is "a 'direct and obvious' conflict between the VE testimony and the DOT" as they read in perfect agreement, at least with regards to this job.

Plaintiff next argues that the assessed limitations of concentration, persistence, and pace should have prevented the VE from stating that he could perform even "simple" jobs. He points to cases which state that a hypothetical question about simple, routine tasks or unskilled work does not automatically incorporate established limitations in concentration, persistence, and pace. However, the test is whether the ALJ properly considered assessed RFC limitations in posing the hypothetical question to the VE and the VE considered them in responding. Plaintiff seems to be relying on a portion of the ALJ's report that indicated a moderate difficulty in concentration and memory in determining "paragraph B" criteria, but ignoring a later note that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment ...." (Doc. 19, 20; Doc. 14-3, 30).

The ALJ makes no mention of concentration or pace limitations in the RFC, and notes that Plaintiff "is able to understand, remember, and carry out short simple instructions." (Doc. 14-3, 30). Plaintiff never argues that limitations about memory, concentration, or pace were incorrectly left out of the final RFC determination. The RFC as a whole is reflected in the ALJ's hypothetical question to the VE, and in fact the ALJ quoted it nearly verbatim. (Doc. 14-3, 30;

Doc. 14-3, 67-68). Plaintiff has not shown that he cannot perform the jobs proposed by the VE and set out in the report by the ALJ, and so the ALJ has met his burden.

Finally, Plaintiff argues that since he cannot perform "light" work, he should be considered as having a sedentary RFC and therefore disabled because of his illiteracy. Although this is moot since he has not shown that the light jobs proscribed by the VE are inconsistent with his RFC, this court notes that a classification of illiteracy is a classification about educational attainment which would be directly contradicted by his claim to have finished the eleventh grade. *See* 20 C.F.R. § 404.1564(b)(5). In either case, that question is irrelevant as Plaintiff is not limited to sedentary work.

## V. CONCLUSION

Considering the foregoing, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's complaint be dismissed.


Dated June **23**, 2016.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**